JOHN J. GHINGHER, BANK COMMISSIONER, *v.* EMILY THOMSEN ET AL.,

[No. 23, October Term, 1933.]

*Decided July 7th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Stuart S. Janney,* for the appellant.

*Walter L. Clark* and *Roszel C. Thomsen,* for the appellees.

*Emory, Beeuwkes, Skeen & Oppenheimer* filed a brief as *amici curiae.*

BOND, C. J., delivered the opinion of the Court.

In the present case the Union Trust Company, one of the banking institutions held in custody and control under the Emergency Banking Act, chapter 46 of the Acts of 1933, holds, as trustee under a mortgage or indenture of trust to secure an issue of bonds of the Potomac Mortgage Company, a fund paid in by that company to meet interest coupons shortly to fall due; and these bondholders and the company itself claim a right to have the amount set apart and applied on the coupons notwithstanding the provisions of the Emergency Banking Act. They applied for the writ of mandamus to require the commissioner to release the money for the purpose, the commissioner answered, the petitioners demurred to the sufficiency of the answer, and the controversy is presented on this demurrer to the answer. The court below, upholding the contention of the claimants, ordered the writ to issue, and the commissioner has appealed.

The mortgage or indenture of trust required of the Potomac Company that "The Company shall account for and deposit with the Corporate Trustee all collections of principal as made; and not later than ten days prior to each coupon interest payment date it shall (and the Company agrees that it will) deposit with the Corporate Trustee a sum sufficient, when added to the amount of cash already in the Trustee's hands available for the payment of coupon interest on the bonds issued hereunder, to pay such coupon interest, and the deposit with the Corporate Trustee of such coupon interest, or so much thereof as may be necessary as aforesaid, shall be deemed to be a sufficient accounting for all interest collected by the Company on the Trust Property during the six months preceding said coupon date".

The fund now claimed was paid into the trust company in fulfillment of the obligation under this clause. It is averred in the petition of the claimants that the amount was paid by two checks to the order of the Union Trust Company

of Maryland, trustee, one drawn on the Western National Bank, of Baltimore, and the other on the Union Trust Company itself, and vouchers accompanying the checks contained the statement of purpose: "For deposit with Union Trust Company, Trustee, to be used in paying gold bond interest on Potomac Mortgage Company bonds on March 1, 1933." The answer of the commissioner, accepted as true on the demurrer, discloses that the trust department of the trust company deposited the checks in its banking department, that the check on the Western National Bank was duly collected by the banking department, and on the banking books credit for the amounts was given to the trust department. There is no dispute of the propriety of the deposit in the trust company's own banking department; that is a common, accepted practice. *Real Estate Trust Co. v. Union Trust Co.,* 102 Md. 41, 61 A. 228. The dispute is on the effect of it. The answer admitted that at all times since the checks were deposited the trust company had on hand, in its own possession or on deposit with other banks, sufficient cash to pay the coupon interest and all of its trust or fiduciary obligations.

The Emergency Banking Act, in providing a restraint, or a moratorium, on withdrawals from banking institutions in the state, has not by its terms excepted deposits of trust funds or funds deposited in special form; on the contrary, it has specified certain public funds as those to be excepted, and, whether the specified exceptions are valid or not, the specification of them implies that within the purview of the statute others are not to be excepted. On all deposits other than those specified the statute by its terms operates broadly, without discrimination on the ground of their origin or nature; and the question now to be considered is therefore one of excepting from the statute a fund not specified by it for exception. The principles for allowing priority or exemption to trust funds in distribution of the assets of insolvent banks have been considered for possible bearing on the question. The court does not understand it to be contended that

there was a segregation of the money here, to be held by the trust company as bailee and paid out in the identical funds. Clearly there was a mingling of the fund among the funds and assets of the bank in the process of payment by checks on deposit of the payor, and collection and deposit by the trust company in its banking department for drawing on the money for payment of the coupons as presented; and the question, as narrowed down, is whether, by reason of a trust relation or a holding upon special deposit, if that is the proper analysis of the situation, the mingled fund is to be separated from the ordinary funds and assets and freed from restraint under those principles applied more familiarly in separating trust or special funds upon insolvency of a depository, and returning them to the beneficiaries or applying them to their purposes as their property which should not be subjected to claims of the depository's creditors. *Frederick County v. Page,* 163 Md. 619, 164 A. 182; *Englar v. Offutt,* 70 Md. 78, 86, 16 A. 497; *Drovers' & Mechanics' Nat. Bank v. Roller,* 85 Md. 495, 37 A. 30; *Italian Fruit & Importing Co. v. Penniman,* 100 Md. 698, 61 A. 694. And see review of decisions in 42 *Yale Law Journal,* 1125, and *Pomeroy, Equity Jurisprudence,* secs. 1048, 1052. See *Frederick Iron & Steel Co. v. Page,* 165 Md. 212, 166 A. 738.

The court is not now dealing with a case of distribution of the funds and assets of an insolvent trust company, and application of them to the payment of creditors, such a case as might arise upon receiverships under sections 9 and 61 of the banking article of the Code, article 11. A new statute, with a new and distinct purpose, is being considered. The Union Trust Company, while under restrictions, is not in receivership and being wound up; it is operating under a moratorium which this statute has imposed for the protection of all persons having claims upon banking funds jeopardized by the prolonged depression and loss of values in assets, and the crisis of February and March, 1933, with its runs by bank depositors. Not only does the statute, in section 71-G, fail to make any express exception for funds held on trust

322

or special deposits, but section 71-B provides further that "Except with respect to new deposits herein provided for, * * * all rights to withdraw deposits from, or assert claims against, any banking institution, under the management of the Bank Commissioner shall be stayed for the period of twelve months and for the extended period, if any, provided in accordance with section 71-A of this Act." The same section also provides that "All of the remedies at law or in equity of any depositor, creditor, stockholder or other person in interest, arising out of agreements or transactions made prior to the passage of this Act, against any banking institution in the custody of the Bank Commissioner as provided by this Act, shall be suspended, and the statute of limitations against any such claims shall be suspended during the period of one year and during such further period not exceeding one year, if any"; and that "During said period of one year and during said extended period, if any, the assets and business of the institution shall be deemed to be in the possession of the said Bank Commissioner *in custodia legis,* and the property of said institution shall not be subject to attachment, execution, distraint or seizure under judicial process of any kind."

The plan and the special arrangement set up by the statute seem obviously comprehensive with respect to banking funds and all claims on them. The law has by its terms laid a temporary restraining and protective hand on those funds against all who might claim rights of withdrawal—omitting any reference now to the exceptions of public funds. And, if this is true, how are trust or special deposits, however they might in case of receivership and distribution be withheld from creditors of a trust company and returned to beneficiaries, to be excepted from the protective moratorium? Trust companies doing banking businesses, as nearly all of them do, are included within the operation and effect of the emergency act. Can it be said that all funds coming from the trust business in such institutions were excepted from the moratorium and left free for immediate withdrawal?

The statute appears, as has been stated, to forbid it in terms; and the purpose would seem to exclude it. In the crisis to be met, all the general banking funds, the mingled funds, which included deposits of money held under trusts as well as money deposited by direct owners, were subject to the panic withdrawals which had begun, and all were threatened by depletion and loss together. It is easily conceivable that the Legislature, from the information before it, may have found the provisions of the moratorium necessary for trust funds, and so designed the restraints to apply to them, not only to preserve those in hand, but to give time for restoration of some found already diminished. And, as the protective action that might be devised had to be taken immediately, there could be no sorting out of portions of the funds according to the varied circumstances of deposit and the varied rights and interests resulting, even if conditions in some institutions might permit this if time were afforded. The crisis allowed no time, and its threat was undiscriminating; and a statute placing the restraint upon any withdrawals whatever of private funds, without discrimination among them, would seem to be well within the demands of the situation being dealt with. It seems also well within the police power of the State to place such a protective restraining hand upon the funds and all such withdrawals.

Imposing a moratorium on money paid in for meeting interest coupons has obviously serious consequences. Doubtless, if all hardships and inconveniences cast upon corporations and individuals by the restraints of the emergency act were known, there would be found other severe consequences, perhaps in some instances more severe, not only to the beneficiaries of trusts, but also to more direct owners and depositors. There is, however, no warrant for discriminating among them on the mere ground of comparative hardship; discrimination could only be upon general legal grounds. In the opinion of this court, a right to trace and recapture trust money, or money specially deposited, as applied in other situations, does not provide those grounds, and bestow free-

dom for withdrawals in this new and distinct arrangement which the Legislature has worked out as a means of averting losses.

Entertaining these views, the court concludes that the order appealed from must be reversed.

*Order reversed, with costs.*

ADKINS, J., concurs in the result.