JOHN J. GHINGHER, Bank Commissioner, *v.* WESTERN MARYLAND RAILWAY COMPANY.

[No. 29, October Term, 1933.]

*Decided January 17th, 1934.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Stuart S. Janney,* for the appellant.

*Eugene S. Williams* and *George Cochran Doub,* for the appellee.

*Walter H. Buck,* with whom was *James Morfit Mullen* on the brief, for the Union Trust Company of Maryland.

URNER, J., delivered the opinion of the Court.

A demurrer to the petition for mandamus in this case having been overruled, and the defendant declining to answer, the court below directed the writ to issue for the purposes specified. The appeal is from that judgment.

The petitioner is the Western Maryland Railway Company, and the defendant is John J. Ghingher, Bank Commissioner of the State of Maryland. In substance, the petition makes the following allegations: On February 24th, 1933, the railway company deposited with the Union Trust Company of Maryland for collection three checks payable to the order of the depositor for sums aggregating $18,635.70. Two of the checks were drawn on banks in Pennsylvania and one on a bank in West Virginia. The acceptance of the checks for collection was under the terms of the Bank Collection Code and in accordance with the following contract expressed upon the form used in listing the items for the bank of deposit: "All checks, or other collections, are taken subject to final payment, and this bank will not be liable for the default or neglect of any agent, including a payee bank, to which collections may be sent, until the proceeds in actual money shall come into its possession." The Union Trust Company collected two of the checks on February 25th, and the third on February 27th, and the proceeds became a part of its cash assets.

The Governor of Maryland, under constitutional authority, by various proclamations made a legal holiday of every business day from February 25th to March 4th. That action was due to a crisis which had developed in the banking business of the state, through heavy withdrawals by bank depositors, which many state banks were unable longer to meet because the value of their assets had become greatly depreciated. It was therefore determined to be necessary to suspend all bank transactions until there could be enacted emergency legislation placing all state banks in the custody of the

bank commissioner, and empowering him to place such restrictions as might be necessary upon withdrawals from banks not financially able to meet actual or anticipated demands.

The General Assembly of Maryland accordingly, on March 4th, 1933, passed an Emergency Banking Act (Acts 1933, ch. 46, adding sections 71A to 71Q to article 11 of the Code of Public General Laws), placing in the custody of the bank commissioner all banks incorporated under the laws of Maryland, and empowering him to limit withdrawals as he might determine, with certain qualifications. The bank commissioner thereupon assumed custody of the Union Trust Company and found, upon examination of its condition, that its assets were insufficient to meet such demands of the depositors and other creditors as could reasonably be anticipated, and the bank commissioner refused to permit the trust company to resume business upon a normal basis, and refused to permit the unrestricted withdrawal of funds on deposit, or the acceptance of new deposits, except under the requirement that they be segregated on its books and preferred as to payment. In accordance with sections 71C and 71D of the Emergency Banking Act, the bank commissioner permitted depositors to withdraw not more than five per cent. of their deposits. There was no material change in the value of the bank's assets between the close of business on February 24th and March 4th, when the bank was placed in the bank commissioner's custody. While restricting withdrawals to five per cent. of the amounts on deposit which were not entitled to preference, the bank commissioner is said to have authorized immediate payment in full of such obligations of the bank as would be entitled to priority upon its dissolution. In alleged disregard of the provision of section 71C of the Emergency Banking Act, requiring uniformity of withdrawals, and in alleged discrimination against the petitioner, the bank commissioner and the Union Trust Company have refused to recognize the petitioner's right of priority and unrestricted withdrawal in regard to the proceeds of the checks to which the petition refers. The proceeds of the checks mentioned in the petition, it is averred, are impressed

with a trust and withdrawable in full for the following reasons:

(a) By the provisions of the Bank Collection Code (section 95, article 11, Code Public Gen. Laws (Supp. 1929), when an agent collecting bank is closed for business by proper legal action before the depositor is paid the proceeds of items intrusted to it for collection, in money or by an unconditional credit therefor, the assets of such agent collecting bank are impressed with a trust in favor of the owner in the amount received from such item, irrespective of whether such proceeds can be traced and identified.

(b) The Union Trust Company received the proceeds of the checks in question after further transactions by it had been suspended by proper legal action, and it was at the time and still is closed for business, within the contemplation of the Bank Collection Code, to the extent that the petitioner has been denied the right of withdrawal of all but five per cent. of the amount so collected.

(c) The bank had no authority to collect the checks after it was closed by proper legal action, and, having collected the items after it was so closed, it had no right to mingle the proceeds with its general assets, and the petitioner has the right to trace and recover such funds.

(d) At the close of business on February 24th, 1933, and prior to the collection of the checks, the assets of the bank were insufficient to meet such demands of depositors and other creditors as could reasonably be anticipated, and it could not have opened on February 25th or at any time prior to its being placed in the custody of the bank commissioner.

(e) If the legal holiday proclaimed for the period from February 25th to March 4th be given the effect of depriving the petitioner of its right to the proceeds of the checks as trust funds, it will be denied its rights under the provision of the Fourteenth Amendment to the Federal Constitution that no person shall be deprived of his property without due process of law.

It is further alleged in the petition that the proceeds of the checks, having been received by the bank after it was

closed by proper legal action, constitute "new money" within the meaning of section 71E of the Emergency Banking Act, and that the petitioner is entitled to preference in payment over all deposits, debts and liabilities of the bank made or incurred prior to the bank commissioner's assumption of its management.

The Emergency Banking Act, by section 71B, having suspended for the period of a year all remedies against financial institutions affected by its terms, it was averred that the petitioner's only means of redress was by application for the writ of mandamus in accordance with section 71L of the statute.

The contentions made on behalf of the petitioner in the argument may be thus summarized:

(1) That the relationship of principal and agent between the petitioner and the bank with respect to the collection of the checks terminated upon the alleged insolvency of the bank before the collection was completed, and its subsequent receipt of the proceeds did not transform the relationship into that of debtor and creditor.

(2) That the petitioner could claim a preference under the Bank Collection Code upon the theory that the bank failed after the proceeds of the checks were collected, but before they were paid or credited unconditionally by the bank.

(3) That the provision of the Emergency Banking Act forbidding for a year the withdrawal of general or special deposits does not apply to funds which it collected wrongfully and without authority after insolvency.

If it be true, as alleged in the petition, that the Union Trust Company was insolvent at the close of business on February 24th, 1933, and remained in that condition during the period of the legal holidays proclaimed by the Governor, it was not until March 4th that the bank was subjected to the bank commissioner's control by the emergency statute effective on that date. During the holiday period there was no executive, legislative, or judicial restraint upon the trust company's acceptance of remittances by the drawee banks in

payment of the checks which had been deposited by the petitioner for collection. It is provided by section 9 of article 13 of the Code (Supp. 1929) that legal holidays, as therein designated, or as appointed by the Governor, "shall for all purposes whatsoever as regards the presenting for payment or acceptance and of the protesting and giving notice of dishonor of bills of exchange, bank checks, drafts and promissory notes, to be treated and considered as the first day of the week, commonly called Sunday, and all such bills, drafts, checks and notes presented for payment or acceptance on these said days, shall be deemed to be presented for acceptance or payment on the secular or business day next succeeding such holiday." That provision is not incompatible with the lawful receipt by the trust company of the remittances on account of the collection items with which this case is concerned. But if, as averred, the collections were completed wrongfully, in view of the bank's condition, it nevertheless actually received the funds which the checks were intended to produce. The money thus collected was held as part of the bank's cash assets when it was placed, with other similar corporations of this state, in the custody of the bank commissioner by the Emergency Banking Act.

In view of the time and circumstances of the Union Trust Company's completion of the collections mentioned in the petition, we are unable to regard those receipts as new deposits made after the bank commissioner assumed control, and as such subject to unrestricted withdrawal. The new deposits indicated by the Emergency Banking Act are those made in the course of the continued business which the bank commissioner was authorized to permit. The act, in section 71A, describes such continued business as including the acceptance of deposits and other banking and fiduciary transactions within the corporate powers of the respective institutions. As the proceeds of the checks deposited by the petitioner on February 24th had come into the trust company's possession some days before the act became operative, and as its terms are not retroactive, the funds could not properly be classified as deposits accepted after that event.

If considered as the proceeds of collection items not paid or unconditionally credited to the payee, the receipts of the bank from those sources would doubtless be impressed with a preferential trust in favor of the petitioner under section 95 of the Bank Collection Code. If proved to have been collected under conditions supporting the theory of a constructive trust, a claim on that ground against the assets of the alleged insolvent institution might be sustainable. But upon either of those theories the petitioner stands in the same position as any other trust claimant having ordinarily a right of payment superior to that of general creditors. Apart from the effect of the Emergency Banking Act, such a right of preference might be enforceable, if supported by sufficient proof. The act, however, in section 71B, provides: "Except with respect to new deposits herein provided for, and liabilities for transactions subsequent to the passage of this act, all rights to withdraw deposits from, or assert claims against, any banking institution, under the management of the Bank Commissioner shall be stayed for the period of twelve months and for the extended period, if any, provided in accordance with Section 71A of this Act." Section 71B contains the further provision: "All of the remedies at law or in equity of any depositor, creditor, stockholder or other person in interest, arising out of agreements or transactions made prior to the passage of this Act, against any banking institution in the custody of the Bank Commissioner as provided by this Act, shall be suspended, and the statute of limitations against any such claims shall be suspended during the period of one year and during such further period not exceeding one year, if any. * * * During said period of one year and during said extended period, if any, the assets and business of the institution shall be deemed to be in the possession of the said Bank Commissioner in *custodia legis,* and the property of said institution shall not be subject to attachment, execution, distraint or seizure under judicial process of any kind."

In *Ghingher v. Thomsen,* 165 Md. 318, 168 A. 123, it was held that the terms of the Emergency Banking Act prevented

the withdrawal from the Union Trust Company of a fund held by it under an express trust. The opinion by Chief Judge Bond in that case fully and clearly discusses a question similar to the one now under consideration. As the reasons stated for the decision in that case apply with equal force to the present controversy, we quote freely from the opinion then delivered. It said:

"The Emergency Banking Act, in providing a restraint, or a moratorium, on withdrawals from banking institutions in the state, has not by its terms excepted deposits of trust funds or funds deposited in special form; on the contrary, it has specified certain public funds as those to be excepted, and, whether the specified exceptions are valid or not, the specification of them implies that within the purview of the statute others are not to be excepted. On all deposits other than those specified the statute by its terms operates broadly, without discrimination on the ground of their origin or nature; and the question now to be considered is therefore one of excepting from the statute a fund not specified by it for exception. * * *

"The court is not now dealing with a case of distribution of the funds and assets of an insolvent trust company and application of them to the payment of creditors, such a case as might arise upon receiverships under sections 9 and 61 of the banking article of the Code, article 11. A new statute, with a new and distinct purpose, is being considered. The Union Trust Company, while under restrictions, is not in receivership and being wound up; it is operating under a moratorium which this statute has imposed for the protection of all persons having claims upon banking funds jeopardized by the prolonged depression and loss of values in assets, and the crisis of February and March, 1933, with its runs by bank depositors. * * *

"The plan and the special arrangement set up by the statute seem obviously comprehensive with respect to banking funds and all claims on them. The law has by its terms laid a temporary restraining and protective hand on those funds against all who might claim rights of withdrawal—

omitting any reference now to the exceptions of public funds. And, if this is true, how are trust or special deposits, however they might in case of receivership and distribution be withheld from creditors of a trust company and returned to beneficiaries, to be excepted from the protective moratorium? Trust companies doing banking businesses, as nearly all of them do, are included within the operation and effect of the emergency act. Can it be said that all funds coming from the trust business in such institutions were excepted from the moratorium and left free for immediate withdrawal? The statute appears, as has been stated, to forbid it in terms; and the purpose would seem to exclude it. In the crisis to be met, all the general banking funds, the mingled funds, which included deposits of money held under trusts as well as money deposited by direct owners, were subject to the panic withdrawals which had begun, and all were threatened by depletion and loss together. It is easily conceivable that the Legislature from the information before it may have found the provisions of the moratorium necessary for trust funds, and so designed the restraints to apply to them, not only to preserve those in hand, but to give time for restoration of some found already diminished. And, as the protective action that might be devised had to be taken immediately, there could be no sorting out of portions of the funds according to the varied circumstances of deposit and the varied rights and interests resulting, even if conditions in some institutions might permit this if time were afforded. The crisis allowed no time, and its threat was undiscriminating; and a statute placing the restraint upon any withdrawals whatever of private funds, without discrimination among them, would seem to be well within the demands of the situation being dealt with. It seems also well within the police power of the State to place such a protective restraining hand upon the funds and all such withdrawals.

"Imposing a moratorium on money paid in for meeting interest coupons has obviously serious consequences. Doubtless, if all hardships and inconveniences cast upon corporations and individuals by the restraints of the emergency act

were known, there would be found other severe consequences. perhaps in some instances more severe, not only to the beneficiaries of trusts, but also to more direct owners and depositors. There is, however, no warrant for discriminating among them on the mere ground of comparative hardship; discrimination could only be upon general legal grounds. In the opinion of this court, a right to trace and recapture trust money, or money specially deposited, as applied in other situations, does not provide those grounds, and bestow freedom for withdrawals in this new and distinct arrangement which the Legislature has worked out as a means of averting losses."

Consistently with that decision, which had not been rendered when the lower court decided this case, we must reverse the judgment now under review.

The constitutional question raised by the petition was not pressed at the argument on appeal. That question also is concluded by the decision in *Ghingher v. Thomsen, supra,* that the emergency restraint by statute upon the withdrawal of bank deposits is within the police power of the state.

*Judgment reversed, with costs.*

DIGGES, J., concurs in the result.