JOHN J. GHINGHER, Bank Commissioner, *v.* MANUFACTURERS' FINANCE COMPANY, INCORPORATED

[No. 47, January Term, 1935.]

*Decided May 3rd, 1935.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Stuart S. Janney* and *Southgate L. Morison,* for John J. Ghingher, appellant.

*Joseph C. France, Alexander Armstrong* and *J. Purdon Wright,* submitting on brief, for the receiver of the Baltimore Trust Company.

*H. Webster Smith* and *J. Kemp Bartlett, Jr.,* with whom was *Eben J. D. Cross* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the court.

A petition for a writ of mandamus was filed in the Court of Common Pleas of Baltimore City against John J. Ghingher, bank commissioner of the State of Maryland, appellant, by the Manufacturers' Finance Company, a corporation, appellee. The purpose of the petition was to impose a preferential trust upon the general assets of the Baltimore Trust Company in favor of the Manufacturers' Finance Company, with the ultimate object of having the claim of the appellee paid in full. An answer to the petition was filed by the bank commissioner. Testimony was taken and the case was submitted to the court. On December 6th, 1934, a judgment was entered in favor of the petitioner. The court sustained the contention that there was a preferential right in the Manufacturers' Finance Company to the extent of

its claim amounting to $18,581.87, and ordered that the writ of mandamus be issued.

There is no dispute as to the facts, and the only question presented on this appeal is whether the Baltimore Trust Company, a corporation doing a general banking business, after having received certain checks for collection prior to the period of the bank holiday, and having collected the checks and credited the proceeds to the account of the depositor during that period and prior to the date upon which the bank commissioner took charge of the bank, should allow a preference as to these deposits over the general depositors and creditors of the bank. The bank commissioner denied the existence of such a preference, and in consequence thereof this suit was instituted to impose upon the general assets of the bank a preference in favor of the appellee. The admitted facts essential to the decision in this case may be summarized as follows:

The Baltimore Trust Company is a Maryland corporation and at the time of the institution and trial of this case, and since the 4th day of March, 1933, has been under the custody and control of the bank commissioner of Maryland. The Manufacturers' Finance Company was a customer of said bank and maintained a deposit account therein. This bank, as agent for the finance company, from time to time received for collection various checks, drafts, etc. The passbook issued to the appellee by the bank had printed upon it the following notice:

"Right is reserved and the Bank is authorized to forward items for collection or payment direct to the Drawee or Payor Bank or through any other Bank at its discretion and to receive payment in drafts drawn by the Drawee or other Banks and except for negligence this Bank shall not be liable for dishonor of the drafts so received in payment nor for losses thereon."

Deposit slips supplied by the bank and used by the depositors, upon which checks and other items were listed, bear the same notice, and these deposit slips were used by the appellee in making the deposits referred to

in this case. On February 21st, 23rd and 24th, the appellee made the deposits in question. All checks so deposited undoubtedly were received by the Baltimore Trust Company for collection. This is conceded by both parties, and by the 28th of February all of said items so received for collection had been paid. This was during the bank holiday and before the bank commissioner took charge of the affairs of the trust company, and during the holiday the proceeds of the checks so collected were placed to the account of the appellee, and were unrestricted in the same sense and to the same effect as all other general deposits in the Baltimore Trust Company. The question is whether the deposits, after collecting the proceeds of the checks during the bank holiday, is an unconditional credit on the books of the bank within the meaning of the Bank Collection Code, article 11, secs. 83-99. Code Pub. Gen. Laws (Supp. 1929). All of these items had been paid by February 28th, and at that time all of them had become unconditional credits, and subject to the order of the appellee to the same extent as other deposits in the bank. This transaction was not different from many others that had occurred, both with the appellee and other depositors, and except for the bank holiday would have been subject to immediate withdrawals. The trust company itself did not suspend operations, close its doors to business, or do any other thing at that time to interfere with the usual course of its business activities. The State of Maryland, acting legally through its chief executive, declared the bank holiday in order to enable all the banks in this state to protect depositors and others against the dissipation of assets and the preferences to be had by those who were paid in consequence of "runs" on banking institutions at the time of great financial distress and depression. So far as the trust company was concerned, no restrictions or conditions were placed by it on this deposit. By what force of reasoning can it be held that persons making deposits of money a short time or immediately before the bank holiday should be in a less favorable position than those who

made deposits for collection, and whose money was received by the banks, after the holiday was ordered by the Executive, and before the bank commissioner took charge? Certainly their equities are equal and their rights in the general assets of the trust company should be equal, since the statute does not otherwise provide.

These deposits could not be designated as new deposits received by the bank commissioner, within the act, because all of the collections were made before March 4th, 1933, the date upon which the bank commissioner took charge of the affairs of the trust company.

The entries of these deposits for collection had been made in the passbook of the appellees, and when the time had elapsed and the date had arrived when such deposits were regarded as unconditional, and in this case all the collections had been actually made by February 28th, 1933, the deposits became unrestricted and subject to withdrawal by the appellee, so far as the trust company was concerned, although the bank holiday declared by executive authority did have the effect of suspending that right. The relationship of principal and agent ceased as soon as these collections had been made and credited to the appellee, as above stated, and in its place had arisen a debtor and creditor relationship. The appellee then had only the claim upon the assets of the trust company which any general creditor or depositor possessed.

The case of *Ghingher v. Western Maryland Rwy. Co.*, 166 Md. 54, 170 A. 586, is the only one in Maryland that has been before this court where the facts are substantially the same as in this case. But the specific relief sought in these two cases is different. Here the purpose is to impress a preferential trust. There it was sought to require the bank commissioner to permit withdrawals of deposits of the Western Maryland Railway Company in the Union Trust Company. These deposits were obtained and held under the same circumstances as those in the Baltimore Trust Company are held in this case. In that case and in the instant case the deposits

had been acquired through collections by the bank during the bank holiday, and were entered in the account of the depositor before March 4th, 1933. In the instant case it is contended that the purpose of the mandamus is not designed to accomplish the withdrawal of the deposit out of the Baltimore Trust Company, but only to impress the general funds of the depository with a trust, but the ultimate purpose of impressing these funds with a trust is to make them preferential and to enable the appellee to obtain in full the payment of its deposits, and in that respect the purpose in both cases is the same, and therefore the same rules should be applicable to both cases. With this in mind, the conclusions arrived at in the *Western Maryland Rwy. Co.* case should govern in this case; otherwise, the purpose of the Emergency Banking Act, sanctioning only uniformity of withdrawals, and designed to prevent discrimination and preferences of one depositor over the other, would be frustrated.

This theory cannot be destroyed by the contention that the plan of reorganization of the trust company alters the situation as above outlined, or affects the conclusions in respect thereto. That part of the reorganization plan set forth in the brief and urged on behalf of the appellee simply states that "claims which may be held entitled to preference or priority for payment shall be paid in full as and when any such preference or priority is finally established, in accordance with law, and reserves will be set up by special deposits with the new bank at the time of the consummation of the plan to cover the balance then remaining unpaid of all possible preferences or priorities as the same may be required by the Bank Commissioner; and as and when such preferences or priorities may be finally established the same shall be paid in full." It is evident that the design of this provision and similar provisions in the plan was to protect and to pay existing preferences as and when such preferences or priorities were finally established. It was not the design of the statute to establish a new prefer-

ence or priority in favor of the funds in question. Such preferences and priorities have not been established with regard to these funds, and it is the opinion of this court that they should not be so established by imposing a preferential trust upon the general assets of the Baltimore Trust Company.

In the case of *Ghingher v. Thomsen,* 165 Md. 318, 168 A. 123, it was clearly indicated that the Emergency Banking Act was intended to prevent withdrawal of trust funds, and the opinion in that case by Chief Judge Bond fully and clearly discusses questions similar to and having a direct bearing upon numerous questions presented for consideration in this case. At that time general legislative policies and the moratorium declared by executive order were designed to prevent the general breaking down of our banking system in this state, occasioned by the unprecedented financial condition that had arisen in the country, and to afford to all depositors, so far as it was possible, an equality in the participation in the assets of those banking institutions that had been seriously affected by the financial crisis that had arisen. It must be remembered that in this case, as well as in the case of *Ghingher v. Western Maryland Rwy. Co.,* *supra,* we are not dealing with the question of distribution of funds and assets in an insolvent bank, and the application of them to the payment of creditors. We are dealing with the rights and preferences existing between a banking institution and a customer or depositor on the one hand, and between the respective depositors in the same banking institution on the other, and so far as is possible equal rights and equities should be observed and preserved between the depositors in this institution. This has been the policy of the State through all the financial difficulties, arising out of or during the financial and business depression, and has been and should be the guiding hand in the determination of many difficult questions that come before this court, and in the light of such policies, and the law and executive orders made in that behalf, our conclusion is that the judgment of the court in this case should be reversed.

While there are not a large number of cases in this country relating to this subject, the general trend of such decisions is in keeping with and in support of those principles and conclusions announced in *Ghingher v. Western Maryland Rwy. Co., supra,* and with what has been said in this opinion. *Richardson v. New Orleans Coffee Co.* (C. C. A.) 102 Fed. 785; *Beale v. Somerville* (C. C. A.) 50 Fed. 647; *Bickford's Inc., v. Broderick,* 234 App. Div. 417, 255 N. Y. S. 241; *People v. Sheridan Trust & Savings Bank,* 358 Ill. 290, 193 N. E. 186; *Union National Bank v. Citizens' Bank,* 153 Ind. 44, 54 N. E. 97; *Lawrence v. Lincoln County Trust Co.,* 125 Me. 150, 151, 131 A. 863; *Sayles v. Cox,* 95 Tenn. 579, 32 S. W. 626; *Great Atlantic & Pacific Tea Company v. Citizens' National Bank* (D. C.) 2 Fed. Supp. 29.

In view of the decisions, in this state and elsewhere, to which reference has been made, and of the conclusions as above expressed, we are of the opinion that the judgment in this case must be reversed. No question of procedure has been raised, and none, therefore, is considered.

> *Judgment reversed with costs to the appellants in this and in the lower court.*

PARKE, J., filed a separate opinion as follows:

It is a settled doctrine in the law of mandamus that the party who applies must show a clear legal right in himself, and a corresponding imperative duty on the part of the defendant, and unless there be the establishment of such clear legal right and duty, there is no ground shown for the issuance of the writ of mandamus. *State v. Taylor,* 59 Md. 338, 344; *Upshur v. Baltimore,* 94 Md. 743, 746, 51 A. 953; *Frederick County v. Fout,* 110 Md. 165, 174, 72 A. 765; *Curlander v. King,* 112 Md. 518, 524, 77 A. 60.

Instead of such necessary clear legal right being shown, the petitioner for the writ relies upon an alleged constructive trust, which, if established, would not be a legal right, but an equitable right. The basis for the

writ, therefore, did not exist in this case, and the writer does not agree that the failure to establish this fundamental requirement should not be assigned as a reason why the writ should not have been issued, although the point was not made below nor argued here. *State v. Latrobe*, 81 Md. 222, 238, 31 A. 788; *Brown v. Bragunier*, 79 Md. 234, 235, 29 A. 7.