THE AMERICAN TRUST AND SAVINGS BANK, Assignee,

*v.*

THE GUEDER & PAESCHKE MANUFACTURING COMPANY.

*Filed at Ottawa May 8, 1894.*

1. BANK CHECK—*assignment "for deposit"—charging back to depositor for non-payment.* The payee of a check indorsed the same to his banker "for deposit," to be placed to the depositor's credit, and sent the same by mail to his banker. On receipt of the check the banker gave the depositor credit, on account, for its amount. The banker, after placing on the check, "For collection and return," forwarded it to the drawer for payment: *Held,* that the deposit of the check was, in legal effect, a negotiation of the same, so as to vest the legal title in the banker, with the right, on his part, to charge it back to the depositor in case it was not paid on presentment, and that the credit given the depositor in his account was a sufficient consideration for the assignment.

2. BANKS AND BANKERS—*embezzlement—act of June 4, 1879, construed.* The first section of the "Act for the protection of bank depositors," approved June 4, 1879, which makes the failure or suspension of any bank or banker within thirty days after receiving any deposit, *prima facie* evidence of an intent to defraud, on the part of such bank, etc., does not apply exclusively to criminal prosecutions under the act, but applies to civil proceedings as well, wherever acts done in contravention of that section are the subject of judicial investigation.

3. The statute making it embezzlement for an insolvent banker to receive on deposit from a depositor not indebted to him "any money, check, draft, bill of exchange, stocks, bonds or other valuable thing which is transferable by delivery," embraces in its terms checks not transferable by delivery, merely. The words "transferable by delivery," were intended to qualify the words "other valuable thing." So the re-

ceiving on deposit of any check, draft or bill of exchange, whether transferable by delivery or by indorsement, is within the meaning of the statute.

4. EVIDENCE—*its sufficiency—objection on appeal.* In a proceeding against the assignee of an insolvent bank to compel the surrender of a check to a depositor on the ground of fraud in obtaining the same by the bank, it appeared that the check was produced on the hearing, but the evidence failed to show by whom it was produced. It further appeared that the case was heard upon the tacit assumption that the assignee had possession of the check, the prosecution and defense being conducted wholly on other grounds. The objection that the proof failed to show that the assignee had the check was not made in the trial court: *Held,* that there was no such failure of proof as to require a reversal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

Messrs. MORAN, KRAUS & MAYER, for the appellant.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a petition, in the matter of Herman Schaffner and A. G. Becker, insolvents, presented to the County Court, by the Gueder & Paeschke Manufacturing Company, praying for an order requiring the assignee of the insolvents to surrender and deliver up to the petitioner a certain check deposited by it with the insolvents prior to the execution of their voluntary assignment. The facts, about which there seems to be little if any dispute, are these:

On the 2d day of June, 1893, and for some time prior thereto, Herman Schaffner and A. G. Becker were co-partners doing business as private bankers, in the city of Chicago, under the firm name of Herman Schaffner & Co. The petitioner, the Gueder & Paeschke Manufacturing Company, is a corporation organized under the laws of the State of Wisconsin, having its principal office and place of business in the

city of Milwaukee. That company, for some time prior to the date above mentioned kept a deposit account with Schaffner & Co., and on June 1, 1893, it forwarded to them by mail a check of which the following is a copy:

"No. 17,047.                "Atchison, Kan., *May 29, 1893.*
"*Blish, Mieze & Silliman Hardware Co.:*

"Pay to the order of the Gueder & Paeschke Manufacturing Company, three hundred and sixty-four 15/100 dollars.

"To First National Bank, Atchison, Kansas.

"The Blish, Mieze & Silliman Hardware Co.,
E. A. Mieze, *Treasurer.*"

Before mailing the check, the petitioner placed thereon the following indorsement: "For deposit with Herman Schaffner & Co., to the credit of Gueder & Paeschke Manf'g Co."

This check was received by Schaffner & Co. on June 2, 1893, in the morning, and they immediately gave the petitioner a credit on account for its amount, and after placing upon it the following indorsement: "For collection and return, June 2, 1893, account of Herman Schaffner & Co., Chicago, Ill.," forwarded it to the place of residence of the drawee for collection. On June 3, the day following, A. G. Becker, who was then the surviving partner of the firm, made a voluntary assignment for the benefit of creditors, to the American Trust and Savings Bank, as assignee. On June 5, 1893, payment of the check was stopped, and on that day it was presented for payment and protested for non-payment.

The petition, which was filed August 24, 1893, set up, in substance, the foregoing facts, and also alleged that Schaffner & Co., at the time of receiving the check knew that they were insolvent, and received it well knowing that they were about to fail, and in fraud of the rights of the petitioner, and also that the petitioner never received any benefit or consideration whatever from Schaffner & Co. for the check, and that there was then due the petitioner on its deposit account, over and above the amount of the check, the sum of $116.37.

The assignee answered denying all the equities of the petition, and a hearing being had on pleadings and proofs, the County Court found against the petitioner, and dismissed the petition for want of equity. On appeal to the Appellate Court, that order was reversed, and the cause was remanded with directions to enter an order requiring the assignee to surrender the check to the petitioner. From that judgment, the assignee now appeals to this court, the Judges of the Appellate Court having duly certified that the cause, although involving less than $1000, involves questions of law of such importance, both on account of principal and collateral interests, that it should be passed upon by this court.

It was admitted by counsel at the hearing, that, upon receipt of the check, Schaffner & Co. gave the petitioner credit for its amount on petitioner's deposit account, the same as though it had deposited that amount in cash, and that the petitioner thereby became entitled at once to draw its checks against such deposit. And it was also admitted that, by the custom and business usage prevalent among bankers, Schaffner & Co., if they had remained solvent, would have had the right, in case of the dishonor of the check for any reason, to charge back the amount of it in their account with the petitioner.

We think it clear that the deposit was in legal effect a negotiation of the check, so as to vest the legal title thereto in Schaffner & Co., with the right on their part to charge it back to the petitioner's deposit account, in case it should not be paid on presentment; and we also think that the credit given to the petitioner in its account, was a sufficient consideration for the assignment of the check. The transaction then was one which, in the absence of fraud, would have passed the title of the check irrevocably to Schaffner & Co., and the claim of the petitioner to relief must therefore rest solely upon its charge of fraud, thus enabling it to rescind the transaction and reclaim the check on that ground.

The fraud alleged consists of the act of Schaffner & Co., as bankers, in receiving the check on deposit, after they had become insolvent, and with knowledge of their insolvency and of their impending failure, thereby occasioning the loss to the petitioner of the amount of the deposit.    That such act, if proved, constituted a fraud upon the depositor can not be doubted, and the question here is, whether the fraud as alleged is established by the evidence.    The fact relied upon as proof is, that on the day next after receiving the deposit, Schaffner & Co., or rather Becker, the surviving partner of the firm, failed, suspended, and executed a voluntary assignment for the benefit of creditors, and that fact, as is claimed, is, by the statute, made *prima facie* proof of fraud.

The first section of the "Act for the protection of bank depositors," approved June 4, 1879, provides that, if any banker shall receive from any person or corporation not indebted to him, "any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery," when at the time of receiving the deposit, such banker is insolvent, whereby the deposit so made shall be lost to the depositor, the banker so receiving such deposit shall be deemed guilty of embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and may also be imprisoned in the penitentiary not less than one nor more than three years.    And the section further provides as follows :    "The failure, suspension, or involuntary liquidation of the banker, broker, banking company, or incorporated bank, within thirty days from and after the time of receiving such deposit, shall be *prima facie* evidence of an intent to defraud, on the part of such banker, broker or officer of such banking company or incorporated bank."    Laws of 1879, page 113 ; 1 Starr & Cur. Stat. 776.

It seems plain that, if this statute can be held to apply to this case, it is proved, *prima facie*, that Schaffner & Co. received the check with intent to defraud the petitioner, and as their

failure has resulted in a loss to the petitioner of the deposit, or at least of a considerable part of it, the fraud thus intended was accomplished. And as no effort was made at the hearing to rebut the *prima facie* presumption raised by the statute, the legal proof of a fraud both intended and consummated must be deemed for all the purposes of this proceeding to be conclusive.

But it is urged that the statute is a part of the criminal law of the State, and that the *prima facie* presumption thereby raised is intended to apply only in criminal prosecutions under it, and can not be availed of in aid of a civil suit brought by a depositor against an insolvent banker or his assignee. In this view we are unable to concur. The statute, though published by the compilers as a part of the Criminal Code, is not a part of it, but is a separate act, passed, as its title indicates, "for the protection of bank depositors," and while it is in part, and perhaps mainly, penal in its provisions, so as to make its publication as a part of the Criminal Law of the State not inappropriate, it was also intended, we think, to apply in cases of civil proceedings. Thus section 4 of the act makes it unlawful for savings banks to assume certain liabilities whereby their deposits may become jeoparded or impaired, and declares all such liabilities to be null and void, but imposes no penalty. It is difficult to see how any criminal prosecution can be instituted under that section, and its only application to remedies, therefore, would seem to arise in civil cases where obligations assumed in contravention of its provisions are sought to be enforced. So the first section provides that certain acts by bankers shall constitute embezzlement, and fixes their punishment, and then it declares what acts shall constitute *prima facie* evidence of an intent to defraud. We see no reason why the rule of evidence established by this latter clause should be held to apply exclusively to criminal prosecutions, but think it applicable to civil proceedings as well, wherever acts done in contravention of the provisions of that section are the subject of judicial investigation.

It is urged in the next place that, conceding that the statute applies to civil proceedings, the check in question is not within its terms. The statute, as we have seen, makes it embezzlement for an insolvent banker to receive on deposit from a depositor not indebted to him, "any money, check, draft, bill of exchange, stocks, bonds or other valuable thing which is transferable by delivery," and the contention is, that the clause, "transferable by delivery," qualifies each of the preceding specifications, and therefore, as the check in question was payable to the order of the payee, and transferable, not by delivery but by indorsement, it was not a security in respect to which the offense of embezzlement created by the first section of the statute could be committed. We are not disposed to adopt the construction of the statute here suggested. It does not seem to us to be the most natural and obvious meaning of the language employed, and we know of no canon of construction which would require its adoption. The words "transferable by delivery," in our opinion, were intended to qualify the words "other valuable thing" only, and it follows that the receiving on deposit of any check, draft or bill of exchange, whether transferable by delivery or by indorsement, is within the meaning of the statute. The construction contended for would render the statute practically nugatory, as applied to commercial paper of the classes indicated, as in the ordinary course of business, paper of that character is usually drawn payable to the order of the payee, so as to be transferable only by indorsement.

It is finally urged that there is no evidence tending to show that the check sought to be recovered by the petitioner ever came into the possession of the assignee. It must be confessed that the evidence on that point is slight. The check was produced at the hearing, and was offered in evidence by the counsel for the petitioner, but the record fails to show by whom it was produced. It does appear, however, that it was in the possession of the insolvents the day prior to the

execution of the assignment, and that it was forwarded by them for presentment to the drawee for payment. It was presented and protested for non-payment two days after the assignment was executed, and in the usual course of business it would have been returned to Schaffner & Co., and thus have come into the possession of the assignee.

The course pursued by counsel in the production of evidence at the hearing was somewhat peculiar, as most of the evidence produced consists of admissions of counsel, to be made out from a somewhat protracted colloquy between them, consisting in part of mutual discussions of the questions at issue, in part of denials and part of admissions, but in no part of the colloquy, or elsewhere, is there the slightest suggestion that the check which the petitioner was seeking to recover was not in the possession of the assignee. If the fact were otherwise, it is most remarkable that no assertion of it was made, for it alone would have been a complete defense to the petition. It is manifest that the cause was heard upon the tacit assumption by both parties that the assignee had possession of the check, and both the prosecution and defense were conducted wholly on other grounds. The production of the check was an act which must have occurred at the hearing, and if it was produced by any one other than the assignee, that fact could not have escaped the attention of its counsel. The point was not raised in the County Court, and is insisted upon for the first time on appeal, and we are inclined to hold that a sufficient inference legitimately arises from the conduct of counsel to justify the court in holding, on appeal, that there is no such failure of proof as to the possession of the check as necessitates a reversal by us of the judgment of the Appellate Court.

We are disposed to concur in the conclusion reached by the Appellate Court, and its judgment will therefore be affirmed.

*Judgment affirmed.*