## DREYER v. PEASE.

(Circuit Court, N. D. Illinois.   July 26, 1898.)

1. HABEAS CORPUS—CONSTITUTIONALITY OF STATUTE.
   When the constitutionality of a state statute has already been sustained by the state courts, a prisoner arrested by virtue of such statute has a right to have its validity under the federal constitution passed upon by the federal courts in a habeas corpus proceeding.

2. INSOLVENT BANKS—RECEIVING DEPOSITS—EMBEZZLEMENT.
   The act of Illinois, providing that any banker receiving a deposit after insolvency shall be guilty of embezzlement, does not deprive any person of liberty or property without due process of law, or deny any person the equal protection of the law, in violation of Fourteenth Const. Amend. U. S. § 1.

Moran, Kraus & Mayer, for petitioner.
C. S. Deneen and A. C. Barnes, for respondent.

SHOWALTER, Circuit Judge.   The petitioner, Edward S. Dreyer, together with one Robert Berger, was formerly engaged in the business of banking in Chicago.   He is produced here by the respondent, the sheriff of the county, in obedience to a writ of habeas corpus.   He was held by the sheriff to answer an indictment against himself and said Berger framed on the following statute of the state:

"Be it enacted by the people of the state of Illinois, represented in the general assembly, that if any banker or broker or person or persons doing a banking business, or any officer of any banking company or incorporated bank doing business in this state, shall receive from any person or persons, firm, company or corporation, or from any agent thereof, not indebted to said banker, broker, banking company or incorporated bank, any money, check, draft, bill of exchange, stocks, bonds or other valuable thing which is transferable by delivery, when, at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer so receiving said deposit shall be deemed guilty of embezzlement, and upon conviction thereof shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto may be imprisoned in the state penitentiary not less than one nor more than three years.   The failure, suspension or involuntary liquidation of the banker, broker, banking company or incorporated bank within thirty days from and after the time of receiving such deposit shall be prima facie evidence of an intent to defraud, on the part of such banker, broker or officer of such banking company or incorporated bank."   Laws 1879, p. 113.

It is insisted on behalf of the petitioner that this statute is void, as against that portion of the first section of the fourteenth amendment to the national constitution which declares that no state shall "deprive any person of  *  *  *  liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."   It is contended by the state that the proceeding in this court is premature, and that the petitioner should be remanded without inquiry here into the validity of the statute.   Clearly, if the statute be unconstitutional, as claimed, the petitioner is unlawfully held, and should be discharged.   If the validity of the statute were an open question in the courts of Illinois, then this court would, under the rul-

ings of the supreme court of the United States, be excused from consideration of the question at this time. But the supreme court of Illinois in Meadowcroft v. People, 163 Ill. 56, 45 N. E. 303, declared this law constitutional and valid. The question in the courts of the state is therefore foreclosed. In Crowley v. Christenson, 137 U. S. 86, 11 Sup. Ct. 13, Christenson had been arrested by the chief of police of San Francisco on a warrant issued by the police court of that municipality for violation of an ordinance with respect to the sale of liquors. He applied to the supreme court of California to be discharged from imprisonment, on the ground that said ordinance was unconstitutional and void. That court ruled against him, declaring the ordinance constitutional and valid. He was again arrested upon a similar complaint for a violation of the same ordinance. After the decision by the supreme court of California, and as a means of relief from the second arrest, he applied for a writ of habeas corpus to the circuit court of the United States for the Northern District of California. The judge holding that court granted the writ, and, being of opinion that the ordinance in question was in violation of the constitution of the United States, discharged the prisoner. From this order of discharge an appeal was taken to the supreme court of the United States, and that court entertained the appeal, and passed upon the question as to the constitutionality of the ordinance. Baker v. Grice, 169 U. S. 285, 18 Sup. Ct. 323, was also an appeal in a habeas corpus case, but there the supreme court of the United States refused to consider the constitutionality of the statute upon which Grice had been indicted, on the ground that this question was still open in the courts of Texas, from one of the districts of which state the appeal had been taken. In other words, the ruling of the district judge in Texas was reversed, with the direction that the prisoner be remanded, merely because, in the judgment of the supreme court of the United States, the consideration of the question was premature in the federal courts. I understand the California case to be a precedent for the position taken by this petitioner that this court cannot be excused from considering the constitutionality of the statute here in question, since the supreme court of the state has already passed upon the point. In view of Crowley v. Christenson, and of the absence of any holding by the supreme court of the United States that a federal judge may decline to entertain a proceeding of this kind under such circumstances, I think the merits of the present application must be considered.

Where a banker, being in fact insolvent, but still pretending solvency, receives money as a deposit from one who, in making such deposit, is misled by the pretense of solvency, and such banker is afterwards prevented by such insolvency from repayment on demand, and fails or suspends, so that repayment on demand is lost to the depositor,—where, in other words, a banker obtains money on the false pretense of solvency, and by the want of such solvency repayment on demand is lost to the depositor,—the offense appears to be complete. Failure or inability, through insolvency to pay on demand, does not make the offense. Such default must result from the undisclosed insolvency. The depositor must be deprived of something of value as

the consequence of the false pretense of solvency, in order to make out the offense. Nor does this false pretense, as a means efficient to secure the deposit, constitute the offense. The loss must result. Both the pretense, as the efficient antecedent to the deposit, and resultant loss, must concur. No banker who heeds this law can be thereby deprived either of any liberty or any property right which was necessary or incidental to his business as a banker. But for this law he, being insolvent, might have taken deposits with impunity, so far as concerned any criminal sanction, but not as a matter of personal prerogative or property right. He had no such right or liberty. What a man may do as of right inherent in himself, or as a property owner, or as one free to contract or carry on business, is one thing; what he may do as being unrestricted by any inhibitory punitive law is another. A statute which forbids a banker, being insolvent, from taking a deposit on the pretense of solvency, does not, in my judgment, deprive him of any liberty or property right guarantied by the national constitution.

The cases cited on the argument concern laws which could be valid only as referred to the police power of the legislature. They were cases in which a liberty or property right, otherwise clearly appertaining to individuals constituting a particular class, is annulled or extinguished by legislative enactment, in the interest of the public. The right, for instance, to build or maintain a wooden house on a city lot, to keep fires going continuously night and day in certain industries, to store materials possibly dangerous within specified territory, to make unrestricted sales of certain kinds of merchandise, etc.,—these rights exist affirmatively and of course, until annulled by positive law pursuant to the police power. The question for a court in such cases is whether or not the enactment, in view of its subject-matter and the uniformity of its operation by force of a classification which is germane and appropriate, has that relation to the public welfare which brings it within the police power of the legislature. What may be called, in strictness, a police enactment, may be thought of, on the one hand, as supplanting constitutional guaranties, or, on the other, as a limitation on liberty or property right first promulgated by the legislature in making said enactment, but latent up to that time. In other words, personal liberty and the rights of property are, in a certain measure, subject to the police power of the state. But why refer to or discuss the police power in connection with a statute which prohibits conduct in itself essentially unfair and fraudulent,—conduct which could not be justified as within the prerogative of any man, either in his character as property owner or as man of business free to deal fairly with others in his own interests?

Counsel argue that conduct such as that set forth in this indictment would not be deemed even tortious in a civil action. American Trust & Sav. Bank v. Gueder & Paeschke Mfg. Co., 150 Ill. 336, 37 N. E. 227, seems to imply the contrary. But, whatever may be the sense of this decision, if the taking of a deposit by an insolvent banker from an unwary depositor, and a subsequent loss resulting from such insolvency, be not actionable as a tort, the reason would be the want of care on the part of the depositor himself. No commendation

or approval of the conduct of such insolvent is to be implied. Holding such a transaction by a civil court to be a mere contract of loan, not procured by actionable fraud, would not mean that the insolvent banker had a right guarantied by the national constitution, and proof against inhibitory state legislation, to take deposits, on the pretense of solvency, from any person too negligent of his own interest to make careful and specific inquiry.

It is suggested that a banker who did not know himself to be insolvent might be convicted under this act. I do not see how the right of an insolvent banker to take money as a deposit can be grounded on his ignorance of his own insolvency, so that such right will fall within the guaranty of the fourteenth amendment touching liberty or property as against inhibitory state legislation. On the other hand, cases such as Com. v. White, 11 Allen, 264, are against the proposition that what may be called positive guilty knowledge is necessary to make the criminal offense. The pretense of solvency, or, putting it in another way, the appearance or seeming to the depositor that the banker knows himself to be solvent, is the efficient cause of the deposit. A banking business, in strictness, cannot be carried on if the banker be insolvent. The assumption of solvency seems a necessary antecedent to any deposit in the usual course of business. A depositor merely in his character as depositor parts with his money, not for profit in the way of interest, but simply upon the assurance that he can have it again on demand, in portions and at times to suit his convenience or inclination. From the standpoint of a depositor, the banking business is sui generis. A depositor in making a deposit does not think of himself as a lender driving a bargain in the way of interest with a borrower, or as a merchant selling on credit; or as one making a deal or contract of some sort for profit. Without inquiry and as a matter of course he assumes the solvency of his bank, leaves his money, and goes his way. The proposition that the insolvent banker who takes a deposit is discriminated against, since any other insolvent may borrow with impunity, is hardly sound. The legislature might, so far as I can see, prohibit by punitive enactment any insolvent from borrowing money, to the loss or injury of the lender, by using for that purpose the false pretense of solvency. The legislature could hardly prevent any insolvent from borrowing money when neither the false pretense of solvency nor any other false pretense is made use of. The present statute is applicable to persons engaged in the business of banking,—a business which, from the standpoint of one about to deposit money, seems to make on its own behalf the direct assertion of solvency.

The law here in question is applicable to any person whose conduct falls within the definition of the offense. How wide or how narrow that definition shall be is a question for the legislature. So far as the legislative power of a state is concerned, constitutions are not grants, but limitations. So long as no constitutional limitation is invaded, the legislature may make whatever law it pleases. I am not able to say that taking money as a deposit by an insolvent bank-

er under pretense of solvency is a right guarantied by the fourteenth amendment. A law which makes the obtaining money by false pretenses a crime would hardly be invalid on the ground that a person using the same pretenses, but failing to obtain and appropriate money or property thereby, would not be punishable. The circumstance that, by the terms of the statute in question, the repayment on demand must be lost to the depositor in order to make the offense, is not a valid objection. Nor as long as any person whose conduct falls within the definition of the offense is liable to the penalty prescribed do I see that the equal protection of the laws is denied. The entire act is entitled an "Act for the protection of bank depositors." The offense in question is created by the first section. It is a limitation on this offense that the depositor must not at the time be himself indebted to the bank. The offense is against the state. The section gives no right of any kind to, nor does it create any liability on the part of, any depositor, whether he be indebted to the bank or otherwise. But, as it seems to me, the question whether or not a criminal statute denies the equal protection of the laws is properly available to one who finds himself amenable to such statute (Budd v. State, 3 Humph. 492), and who himself, as he conceives, is thereby denied the equal protection of the laws. The penalty of the statute here in question goes without discrimination against any person whose conduct falls within the definition of the offense.

As concerns the last sentence of the section, I do not think any question can properly arise in this proceeding. The state is not obliged to make use of—and may not choose or be able to use—the rule of evidence there defined. That it will be able to make out a case, or what evidence the prosecuting attorney will introduce, cannot now be known. So far as is shown here, there may have been no suspension of the banking business by this petitioner and his partner until after the 30 days, or such suspension may have occurred on the same day when the deposit alleged in the indictment was made. At all events, it does not appear that the rule of evidence in question has anything to do with the detention now complained of. I think the writ should be discharged, and the petitioner remanded to the custody of the sheriff; and it is so ordered.