(No. 22364.—

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE SHERIDAN TRUST AND SAVINGS BANK. —(WILLIAM L. O'CONNELL, Receiver, Plaintiff in Error, *vs.* THE MARTHA WASHINGTON CANDIES COMPANY, Defendant in Error.)

*Opinion filed October 24, 1934—Rehearing denied Dec. 5, 1934.*

Orr, J., dissenting.

Markman, Donovan & Sullivan, (Henry O. Nickel, of counsel,) for plaintiff in error.

J. Lester Williams, and Marvin Wallach, (J. Lester Williams, Jr., of counsel,) for defendant in error.

Mr. Justice Herrick delivered the opinion of the court:

The Sheridan Trust and Savings Bank of Chicago (hereinafter called the Sheridan Bank) was open until about 8:00 P. M. of Saturday, June 6, 1931. It did not thereafter open its doors and the Auditor of Public Accounts took charge on the morning of June 8, 1931. Within a few days thereafter the Auditor appointed a receiver.

The usual chancery proceeding for the liquidating of the affairs of the bank was later filed by the Auditor of Public Accounts in the circuit court of Cook county. The Martha Washington Candies Company (hereinafter called the candy company) filed its intervening petition in the chancery proceeding, seeking to have its claim for $25,000 against the bank allowed as a preferred claim. On the hearing the circuit court held that the claim of the candy company was a general claim and not entitled to any priority of payment. The candy company prosecuted an appeal to the Appellate Court for the First District, where the order of the circuit court was reversed and the cause was remanded, with directions to that court to enter a decree directing the receiver of the Sheridan Bank, out of the estate in his hands, to pay as a preferred claim said sum of $25,000. The cause comes here on a writ of *certiorari* granted to review the record.

It will be proper to dispose of a preliminary point made by the candy company before taking up the case on its merits. It contends that this court has no jurisdiction to grant *certiorari* in the cause; that the writ having been granted subsequent to January 1, 1934, the power of the court to entertain a petition for *certiorari* was taken away by the Civil Practice act of 1933. It is sufficient to say that the Civil Practice act did not apply to the cause, and under rule 1 of this court, as a matter of procedure, writs of *certiorari* in cases pending prior to the first day of January, 1934, are governed by the former Practice act.

There is practically no dispute as to the facts in the case. The candy company had been a regular commercial depositor in the Sheridan Bank for a period of about six months immediately prior to the closing of the bank. It carried in the bank two accounts, one known as a general checking account and the other as a pay-roll account. It operated a chain of candy stores. Its main depository was the Sheridan Bank, but it had depositories in a great many

cities throughout the United States. The First National Bank of Kansas City, Missouri, was one of its depositories. Prior to the fourth of June, 1931, the candy company on different occasions had transferred to its credit in the Sheridan Bank funds standing to the candy company's credit in the First National Bank of Kansas City, and had done so by the same method as was adopted in the transaction hereinafter referred to and out of which this litigation arises. Such collections were made without expense to the candy company and the present check was to be collected without expense to it.

In its intervening petition the candy company charged that there was in force and effect between the Sheridan Bank and the candy company during all the time that the candy company was a depositor in the Sheridan Bank, a certain written agreement which is set forth *in hæc verba* in the intervening petition. So far as pertinent to the issues here, that agreement provided that the Sheridan Bank in receiving checks for deposit or for collection acted as the agent of the depositor, was required to exercise ordinary diligence in selecting agents at other points, and expressly reserved the right to send all items for collection to its regular or special correspondents, or, if expedient, direct to the bank upon which the item was drawn; that all items were credited to the depositor conditionally, subject to payment, the bank reserving the right to charge back any item pending payment of the proceeds thereof in money. The agreement was set forth in the pass-book issued by the Sheridan Bank to the candy company and in which pass-book the Sheridan Bank entered all sums of money, checks and other items of deposit deposited by the candy company. The petition further charged, in substance, that at the time of the deposit of the $25,000 check hereinafter referred to, entry of such deposit was made on a deposit slip supplied by the bank, which deposit slip recited the terms of the deposit. The terms so set forth, in substance, were that all items

were credited conditionally, subject to final payment, and the right to charge back by the bank pending final settlement of the proceeds; that all items were credited as cash, subject to final payment in cash or solvent credits, the terms upon which the bank undertook collection, such terms being practically identical with those above stated as being set forth in the pass-book. The petition alleges that the candy company relied upon the agreement set forth in the pass-book and upon the deposit ticket.

During the time that it was a depositor of the Sheridan Bank the candy company had always maintained a balance and had never drawn against uncollected deposits nor made any effort to do so. On June 4, 1931, it drew its check for $25,000 on the First National Bank of Kansas City. The check was post-dated June 5, 1931, and was payable to the order of "Ourselves." On the reverse side there appeared the words, "Transfer $25,000.00," and also the words "For deposit only" above the signature of the candy company, by its vice-president. The check so endorsed, accompanied by a deposit ticket bearing the legend hereinbefore mentioned, was deposited with the Sheridan Bank on June 4 and credit was given for the amount of $25,000 in the pass-book of the candy company on that occasion and like entry made on the books of the Sheridan Bank. It is obvious that the intention of both parties was that the check should be received as a deposit by the bank conditioned upon the check being paid, and was not merely an item for collection. The Sheridan Bank carried an account with the Foreman-State National Bank of Chicago (hereinafter called the Foreman Bank). The Sheridan Bank endorsed the check and on June 5, 1931, deposited it with the Foreman Bank, the Sheridan Bank receiving credit in its account in the Foreman Bank for the sum of $25,000, conditional upon the payment of the check in money or solvent credits.

The Foreman Bank was a member of the Federal Reserve System. On June 5 the Foreman Bank had other

cash items on Kansas City institutions and made a list of such items totaling $26,683.86, which included the $25,000 check, and mailed all the items for collection to the Federal Reserve Bank of Kansas City with a letter as follows: "We enclose the following items for our credit with the Federal Reserve Bank of Chicago, Illinois. Telegraph nonpayment of items $500 or over." Concurrently therewith, the Foreman Bank, by virtue of an agreement between banks and a certain "time schedule," sent a written notice by mail to the Federal Reserve Bank of Chicago for "deferred credit" of $26,683.86 under the provisions of Regulation "J" of the Federal reserve board. Regulation "J" was offered in evidence by the intervening petitioner, as well as the instrument referred to as the "time schedule" issued by the Federal Reserve Bank of Chicago. This time schedule relates to collection items by banks and lists the different states of the Union, and many of the important cities in the States, under the heading, "Number of days deferred." Under this heading Kansas City was "one day distant." By the regulation, items forwarded to a point one day distant would be credited by the Federal Reserve Bank of Chicago to the depositing bank on the next day following the deposit of such item for collection provided the items were paid, thereby permitting such items to be computed in the depositing bank's reserve of that date. The notice sent by the Foreman Bank to the Federal Reserve Bank of Chicago under the heading "One calendar day points," states: "We have to-day sent cash letters direct to the Federal reserve banks and branches listed below, to be credited to our reserve account on June 6, 1931." Under this heading appeared the $25,000 check in question.

The evidence shows that the several Federal reserve banks of the nation maintain a gold reserve at Washington, D. C., subject to the daily balancing of credits between them. At the close of business on each day each bank advises the Federal Reserve Board at Washington, by tele-

gram, the amount each holds for the credit of each of the other Federal reserve banks, and from the gold reserve of the reporting bank there is transferred to the gold reserve of the respective banks such amounts as may be necessary to settle the credits. Section 4 of schedule "J" provides as follows:

*"Time schedule and availability of credits.*

"(1) Each Federal reserve bank will publish a time schedule showing the time at which any item sent to it will be counted as reserve and become available for withdrawal or other use by the sending bank. For all checks received, the sending bank will be given immediate credit or deferred credit, in accordance with such time schedule and as provided below.

"(2) For all such checks as are received for immediate credit in accordance with such time schedule, immediate credit, subject to final payment, will be given upon the books of the Federal reserve bank at full face value in the reserve account or clearing account upon day of receipt, and the proceeds will at once be counted as reserve and become available for withdrawal or other use by the sending bank, provided, however, that the Federal reserve bank may in its discretion refuse at any time to permit the withdrawal or other use of credit given for any item for which the Federal reserve bank has not yet received payment in actually and finally collected funds.

"(3) For all such checks as are received for deferred credit in accordance with such time schedule, deferred credit, subject to final payment, will be entered upon the books of the Federal reserve bank at full face value, but the proceeds will not be counted as reserve nor become available for withdrawal or other use by the sending bank until such time as may be specified in such time schedule, at which time credit will be transferred from the deferred account to the reserve account or clearing account subject to final payment, and will then be counted as reserve and

become available for withdrawal or other use by the sending bank, provided, however, that the Federal reserve bank may in its discretion refuse at any time to permit the withdrawal or other use of credit given for any item for which the Federal reserve bank has not yet received payment in actually and finally collected funds."

It was stipulated by the parties that the Federal Reserve Bank of Kansas City received the check at 8:45 A. M. June 6, presented the check before noon of that day to the First National Bank of Kansas City, received from that bank payment in full of such check, and in compliance with schedule "J" the Federal Reserve Bank of Kansas City notified the Federal Reserve Board at Washington, D. C., on June 6, of the collection of such check. It was further stipulated in the record that the proceeds of the collection of the $25,000 item were actually received by the Federal Reserve Bank of Chicago on June 6, 1931. The record shows that on the cash letter of advice sent by the Foreman Bank to the Federal Reserve Bank of Chicago there was made the entry, "Federal reserve book-keeping department, entered June 6, 1931. Available June 6, 1931.—Book-keeping Department, entered June 6, 1931."

On the eighth of June, 1931, the candy company attempted to stop payment on the check, but the Federal Reserve Bank of Kansas City refused to recognize such effort to stop payment. On June 6 that bank sent by mail to the Federal Reserve Bank of Chicago a letter of advice informing the latter bank that said items of $26,683.86, which included the $25,000 check, had been received for immediate credit. This letter did not reach the Federal Reserve Bank of Chicago until the morning of June 8, 1931, after the Auditor had taken possession of the Sheridan Bank.

It is not claimed by the candy company that the deposit was a special deposit or that the Sheridan Bank was known by its officers to be insolvent at the time they re-

ceived such check for deposit and collection. The general rule is, that in case of a general deposit in a bank to the credit of a depositor the relation thereby created is that of debtor and creditor and not of trustee and *cestui que trust* nor of principal and agent. The bank is liable to pay on demand but may use such funds as its own in the ordinary course of its business pending re-payment at any time on demand. (*McQueen* v. *Randall,* 353 Ill. 231; *Kamfner* v. *Auburn Park Savings Bank,* 344 id. 200.) Under the contract for deposit and collection between the Sheridan Bank and the candy company the latter was bound by the methods selected by the Sheridan Bank for the collection of the check through such banks as it might select to assist in making the collection. (*Wilson* v. *Carlinville Nat. Bank,* 187 Ill. 222.) The candy company in depositing the check is presumed to have adopted the usage and custom of the banking business in dealing with such collection. (*Fay & Co.* v. *Strawn,* 32 Ill. 295; *Holden* v. *Western German Bank,* 132 Fed. 187.) This rule included the custom of banks to transfer debits and credits in the course of making their bank clearings. *Givan* v. *Bank of Alexandria,* 47 L. R. A. (La.) 270; *Gonyer* v. *Williams,* 143 Pac. (Cal.) 736; *Union Nat. Bank* v. *Citizens Bank,* 153 Ind. 44, 54 N. E. 97.

It is urged by the candy company that the endorsement of the check "For deposit only" constituted a restrictive endorsement under our statute. Section 4 of the act of 1931, relating to the deposit and collection of checks, (Laws of 1931, pp. 671, 672,) was not in force at the time of the transaction in question and therefore that section does not control in this case. The circumstances attending the endorsement and its purpose are to be considered in arriving at the effect of the endorsement. The vice-president of the candy company, who made the endorsement on the check, testified that there were banks with whom the candy company had deposits, about the

financial standing of which banks the candy company did not feel it knew as much as it did about the Sheridan Bank; that the endorsement was made "For deposit only" so that the proceeds could not be intercepted or used in any other way. It is apparent that the candy company was familiar with the method of collection of out-of-town checks, and that the endorsement was made to guard against sub-agents of the Sheridan Bank in making the collection and not through any lack of confidence in the Sheridan Bank. As between the Sheridan Bank and the candy company the check had been deposited to the credit of the candy company conditioned upon its payment in cash or solvent credits, with the right of the Sheridan Bank to charge the check back against the candy company's account in the event the check was not paid. Notwithstanding the restrictive endorsement, the title to the check was in the Sheridan Bank and it could negotiate such check. (*American Trust and Savings Bank* v. *Gueder & Paeschke Manf. Co.* 150 Ill. 336.) In view of the facts shown by the evidence, such restrictive endorsement of itself does not establish any right of preference of the claim of the candy company against the receiver.

It is earnestly urged that because the letter of the Federal Reserve Bank of Kansas City to the Federal Reserve Bank of Chicago dated June 6 was not received by the latter bank until June 8 there was no actual payment to that bank until after the insolvency of the Sheridan Bank, and that the funds collected are therefore trust assets in the hands of the receiver for the benefit of the candy company. We cannot agree with this contention. The letter does not have the effect contended for it. The letter is headed, "Acknowledgment cash letters received for immediate credit by the Federal Reserve Bank of Kansas City for the Federal Reserve Bank of Chicago." On this letter there is listed, with other items, the item of $26,683.86 under date of June 6. There is not a word in the writ-

ing stating that the collection had been made or the disposition of such item. Notice that the payment of the $25,000 check had been made on June 6 was not conveyed through the letter of that day from the Federal Reserve Bank of Kansas City to the Federal Reserve Bank of Chicago. The custom and rules of the banks involved entered into the contract of collection. This required telegraphic notice of the non-payment of any item in excess of $500. Failure to receive telegraphic notice of the non-payment of the $25,000 item in accordance with such custom and rules was, in effect, notice that such collection item had been paid. The letter does not alter the situation as to when the funds were received by the Federal reserve bank or by the candy company.

By the deposit of the check in the general checking account of the candy company the relation of debtor and creditor was created, but by force of the agreement and custom applicable to out-of-town cash items the agreement suspended the relation of debtor and creditor pending the collection of the check. The credit given to the candy company was a conditional credit operative during the time that the Sheridan Bank was undertaking the collection, in due course, of the check. In undertaking such collection the Sheridan Bank was acting as the agent of the candy company. This agency, however, did not require the bank to collect specific funds and to deliver the specific funds to the candy company. The bank was required simply to collect in cash or solvent credits. When the collection was so made, the agency of the bank immediately terminated and the conditional credit that had been given by the bank to the candy company instantly became an unconditional credit.

The record shows that it had never been the practice of the Sheridan Bank to notify the candy company when the funds had been collected upon any of the outside checks deposited in the bank to the account of the candy company. The credit extended to the candy company under

the date of June 4 in its pass-book required nothing further to be done on the part of the bank in the way of any book-keeping entries as between the Sheridan Bank and the candy company. The same situation is true as between the account of the Sheridan Bank with the Foreman Bank and the account of the Foreman Bank with the Federal Reserve Bank of Chicago. Credit to each of the several banks and the candy company was conditioned upon the collection of the item in cash or solvent credits. Whenever the item was collected then the credit given in the several banks to the interested parties became absolute, fixed and conclusive. (*Marine Bank* v. *Fulton County Bank,* 69 U. S. 255, 17 L. ed. 785; *Marine Bank* v. *Rushmore,* 28 Ill. 463; *Tinkham & Co.* v. *Heyworth,* 31 id. 519.) Until the time that the check was collected the candy company could have revoked the agency, but when the payment of the check was made, at the close of the business day on which the check was collected the purpose of the agency had been completed and the relation of debtor and creditor was fixed between the parties. (*Commercial Nat. Bank* v. *Armstrong,* 148 U. S. 50, 37 L. ed. 363; *People* v. *City Bank of Rochester,* 93 N. Y. 582.) Having in mind that it is admitted that the Federal Reserve Bank of Chicago on June 6 actually received the proceeds collected, the rights of the several parties interested were fixed thereby. The Sheridan Bank could not then, nor could any intermediate bank participating in the collection of the check, rescind its action, nor could any of the banks deny the existence of the unconditional credit to the funds entered upon their respective books of account. The contract between the Sheridan Bank and the candy company had been fulfilled through the collection of the check, the proceeds of which were available to the candy company at the very instant the check was collected and credit given upon the books of the Federal Reserve Bank of Chicago. The candy company had received just what its contract

called for—cash or solvent credits. There was no way by which it could have been deprived of that credit. Payment had been made and the conditional credit thereby fixed as a permanent or unconditional credit.

No legal or equitable grounds have been shown by the record under which the claim of the candy company should have any priority over the claims of the general depositors of the bank. On the record made there is nothing which would justify the classification of its claim in a class superior to that of general creditors of the bank. Its claim for the proceeds of the $25,000 check is a general claim, only, against the receiver of the Sheridan Bank.

The order of the Appellate Court is reversed and the order of the circuit court of Cook county is affirmed.

*Order of Appellate Court reversed.*
*Order of circuit court affirmed.*

Mr. JUSTICE ORR, dissenting.