DEAN TOBACCO WAREHOUSE CO. *v.* AMERICAN NAT. BANK.*

(*Nashville,* December Term, 1937.)

Opinion filed June 11, 1938.

---

*This case reprinted and annotated in 118 A. L. R. 360.

LEE, COX, MEEK & HIER, of Knoxville, and LOUIS LEFT-WICH, of Nashville, for Warehouse Co.

BASS, BERRY & SIMS, of Nashville, for American Nat. Bank.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill complainant, a Tennessee corporation with its principal office in Knoxville, seeks to recover from defendant, a banking corporation with its place of business in Nashville, the proceeds of a check in the sum of $9,087.02, together with interest. The chancellor entered a decree in favor of complainant. The Court of Appeals took a contrary view of the cause and dismissed the bill. *Certiorari* has heretofore been granted, and the cause presented by counsel at the bar of this court.

Complainant carried an account with the East Tennessee National Bank in Knoxville. On the morning of January 17, 1933, complainant, in the usual course of bus-

iness, deposited this check in said Knoxville bank drawn to its order by the American Supplies, Inc., on defendant bank. Said check was endorsed as follows:

"Pay to the order of
East Tennessee National Bank
Knoxville, Tenn.
Dean Tobacco Warehouse Co., Inc.,"

The depository bank thereupon endorsed the check as follows:

"Pay to the order of
Any Bank or Banker
Prior Endorsements Guaranteed
87-45 Jan 17 1933 87-45
East Tennessee National Bank
Knoxville, Tenn."

The check was thereupon forwarded to defendant bank "for collection and credit." The check was received by defendant on the morning of January 18, 1933, charged to the account of the American Suppliers, Inc., and the proceeds credited to the account of the East Tennessee National Bank, as instructed.

The East Tennessee National Bank conducted its business in the usual manner on January 18, 1933. The next day was a holiday, on which date the directors of the East Tennessee National Bank met and decided to liquidate the affairs of the bank, and notified the Comptroller of the Currency to take charge of the bank, which he did, and notice of the closing of the bank was given on that day.

The East Tennessee National Bank and the defendant bank maintained reciprocal accounts. That is to say, it was the custom of the East Tennessee National Bank to send all checks drawn on banks in the Nashville terri-

tory to the American National Bank for collection and credit. The American National Bank had a similar account in the East Tennessee National Bank. The two accounts were adjusted from time to time by drawing drafts on each other. When the East Tennessee National Bank closed those reciprocal accounts showed a balance in favor of defendant for more than $20,000.

Complainant in depositing said check used the customary deposit slip, on which was printed the following:

"In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

██ Much is said in the briefs about the Massachusetts rule, approved by this court, which makes the collecting bank the agent of the depositor, and the New York rule, which provides that the collecting bank is the agent of the forwarding bank and not of the depositor. But, as stated by the Supreme Court of the United States in *Federal Reserve Bank* v. *Malloy*, 264 U. S., 160, 44 S. Ct., 296, 68 L. Ed., 617, 31 A. L. R., 1261, in considering these rules, they may be varied by contract, express or implied.

In 9 C. J. S., Banks and Banking, 505, section 248, it is said:

"As a broad general rule, in the absence of statute, the question of whether the collecting bank, after the collection is made, stands in the relation of debtor or of agent or trustee as to the owner of the paper or the forwarding bank, and the consequent determination of the ownership of the proceeds, depend on the intention of the parties to the transaction as evidenced by their contract and the surrounding circumstances."

In the cause on trial it was the agreement of the parties that the East Tennessee National Bank should act as agent for complainant in collecting said check, and it was given authority to appoint a subagent for the purpose of collection. It was further agreed that the subagent could remit in cash, or, if solvent, discharge its obligation to the depositor by crediting the proceeds to the account of the forwarding bank. That is exactly what it was instructed to do and what it did do. Thereupon the transaction was concluded, and the conditional credit given complainant by the East Tennessee National Bank became absolute. Upon this question we quote from 9 C. J. S., Banks and Banking, 497, 498, section 242, as follows:

"There are two usual methods of handling items forwarded for collection; that of reciprocal accounts and that of remittance. Under the reciprocal accounts method the collecting bank, on receipt of payment of the item, gives credit on its books to the forwarding bank and the forwarding bank charges the collecting bank on its books, the banks settling from time to time with the one or the other in accordance with the accumulated balance. Under the remittance method the forwarding bank sends

the item to the collecting bank with instructions to collect and remit immediately. Under the reciprocal accounts method the relation of the banks is that of creditor and debtor. Under the remittance method the collecting bank is not authorized to retain the proceeds in its hands and therefore acts only as an agent for the forwarding bank.''

In the same book, on page 501, section 245, it is said: ''Where provisional credit has been given a depositor, subject to collection, this becomes absolute when the correspondent receives payment and credits the forwarder.''

A case directly in point is that of *People* v. *Sheridan Tr. & Sav. Bank,* 358 Ill., 290, 193 N. E., 186. There the Martha Washington Candies Company was the depositor and the Sheridan Bank the forwarding agent. The collecting bank during banking hours of June 6, 1931, collected the involved draft and gave the forwarding bank credit for same. The forwarding bank closed that night and never opened thereafter. It had received no notice that the draft had been collected and credited to its account when it ceased to do business. In holding that the relationship between the depositor and the Sheridan Bank had changed to that of debtor and creditor, the court said (page 191): ''Credit to each of the several banks and the candy company was conditioned upon the collection of the item in cash or solvent credits. Whenever the item was collected, then the credit given in the several banks to the interested parties became absolute, fixed, and conclusive. *Marine Bank* v. *Fulton County Bank* [2 Wall., 252], 69 U. S., [252], 255, 17 L. Ed., 785; *Marine Bank* v. *Rushmore,* 28 Ill., 463; *Tinkham & Co.* v. *Heyworth,* 31 Ill., 519. Until the time that the check was collected, the candy company could have revoked the

agency, but when the payment of the check was made, at the close of the business day on which the check was collected, the purpose of the agency had been completed and the relation of debtor and creditor was fixed between the parties. *Commercial Nat. Bank* v. *Armstrong,* 148 U. S., 50, 13 S. C., 533, 37 L. Ed., 363; *People* v. *City Bank of Rochester,* 93 N. Y., 582.''

To the same effect is the holding in *Rickey* v. *New York State Nat. Bank, D. C.,* 7 F. Supp., 29, affirmed in 2 Cir., 70 F. (2d), 1020; *Federal Reserve Bank* v. *Peters,* 139 Va., 45, 53, 123 S. E., 379, 382, 42 A. L. R., 742; *Bank of Poplar Bluff* v. *Millspaugh,* 313 Mo., 412, 281 S. W., 733, 47 A. L. R., 754. We find no case taking a contrary view, and those referred to are well reasoned and are in accord with the agreement of the parties.

■ When the defendant bank collected the involved check and gave the forwarding bank credit for same, as directed by the latter and authorized by complainant, the obligation of the East Tennessee National Bank to complainant became absolute; as much so as if defendant on the morning of January 18 had paid the forwarding bank the proceeds of the check in cash. It follows that had the collecting bank subsequently become insolvent instead of the forwarding bank, the loss would have fallen upon the forwarding bank rather than upon complainant.

■ It is further insisted on behalf of complainant that the relationship of the parties had not changed to that of debtor and creditor for the reason that the forwarding bank had not received notice of the collection and credit when it suspended business. When the credit was given the transaction was completed. The notice of the payment of the check was not part of the transaction it-

self, but only evidence of the transaction. *Rickey* v. *New York State Bank, supra; People* v. *Sheridan Tr. & Sav. Bank, supra; Storing* v. *First National Bank,* 8 Cir., 28 F. (2d), 587, 589.

The decrée of the chancellor was based upon the theory that the conditional credit did not become absolute until the forwarding bank had received notice that the check had been collected and the proceeds placed to its credit. Such was not the agreement of the parties, and the authorities hold, as stated above, that notice is not a part of the transaction but only evidence thereof.

For the reasons stated, the decree of the Court of Appeals is affirmed.