### FIRST TRUST & SAVINGS BANK OF ONEIDA, TENN., v. KENT.
#### No. 8492.

Circuit Court of Appeals, Sixth Circuit.
April 14, 1941.

S. F. Fowler, of Knoxville, Tenn. (J. A. Fowler, S. F. Fowler, H. G. Fowler, and Wm. C. Wilson, all of Knoxville, Tenn., on the brief), for appellant.

Eugene J. Bryan, Jr., and Estes Kefauver, both of Chattanooga, Tenn. (Lynch, Whitaker, Hall & Allison, Bryan & Bryan, and Sizer, Chambliss & Kefauver, all of Chattanooga, Tenn., on the brief), for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a judgment dismissing the petition of appellant, First Trust & Savings Bank of Oneida, Tennessee, against appellee, Paul J. Kent, receiver of the Chattanooga National Bank, wherein appellant seeks to recover from appellee part of the proceeds of a draft or bill of exchange.

In February, 1933, the exact date not shown in the record, the Cincinnati. New Orleans, Texas & Pacific Railway Company, in payment of taxes, drew a draft for $50,-687.01 upon its treasurer in favor of Scott County, Tennessee. According to the terms of the instrument, it would become a sight draft and be paid upon presentation if presented for payment prior to March 1, 1933. It was received by the Trustee of Scott County, Tennessee, on Friday, February 24, 1933, and unqualifiedly indorsed by him and delivered to the appellant on February 25, 1933, and appellant gave the Trustee unrestricted credit in its accounts for the face of the draft. On the same day, appellant indorsed the draft "Pay to the order of the First National Bank of Chattanooga, Tennessee" and forwarded it to that bank for collection and credit, together with fifteen other items aggregating $204.16. The First National Bank of Chattanooga, prior to the mailing of the draft to it by appellant, had discontinued its banking business and was succeeded by the Chattanooga National Bank. The First National Bank of Chattanooga indorsed the draft "Pay to the order of any bank or banker," and delivered it to its successor. On Sunday, February 26, 1933, the Chattanooga National Bank indorsed the draft in the exact language of its predecessor and on that date by mail forwarded it for collection together with eighteen other items, aggregating $570 to the Central Trust Company, Cincinnati, Ohio, a banking corporation. On Monday, February 27, 1933, the Chattanooga National Bank by letter notified appellant it had credited the items to it. This letter is found in the margin. [1]

[1] Your account has been credited with your sendings as follows:

| Date | Description | Amount | Date | Description | Amount |
|---|---|---|---|---|---|
| 25 | RT | 2.00 | | | |
| 25 | RM | 159.48 | | | |
| 25 | RM | 50,891.17 | | | |

This Bank accepts deposits and collections on the following conditions only: (1) Items deposited on this bank which are not good at the close of the business day may be charged back to the depositor. (2) All items not drawn on this bank are taken at depositor's risk until actual final payment. (3) All items may be forwarded for collection or payment direct to the bank upon which they are drawn or where payable, or to or through collecting agents. which agents shall have the right to send same direct to the drawee bank or where payable. (4) This bank or collecting agents may receive either cash or drafts of the payee bank or other bank and will not be liable for failure to collect drafts so received nor for losses thereon. And should either the item itself be lost or no returns be received within a reasonable time or the draft paying same be dishonored, the amount of said items may be charged back to the customer without liability upon the part of the bank—whether the item itself can be returned or not. (5) Each collecting agent is the agent of the depositor, and neither this bank nor any collecting agent shall be responsible for the defaults, neglects or omissions of any other bank or sub-agent, including the payee of such check or other items. (6) Delivery to the bank of items for collection or credit shall constitute ac-

Appellant and the First National Bank of Chattanooga, and its successor maintained reciprocal checking accounts and collected items for each other.

Appellant had on deposit with the Chattanooga National Bank approximately $8,000 at the time said bank received the present draft, which it maintained during the period here in question. On March 2, 1933, appellant drew its check for $5,000 on the Chattanooga National Bank, which it refused to pay, notifying appellant it was observing "bank holidays" in accordance with the proclamation of the Governor of Tennessee.

On Monday, February 27, 1933, the Central Trust Company received the Railway Company's draft and immediately presented it to its treasurer for payment which he honored, and the collection was credited to the Chattanooga National Bank. Before the collection of the draft the Central Trust Company advised the forwarding bank of its receipt. This letter is found in the margin.[2]

This communication was received by the Chattanooga National Bank on February 28, 1933. This bank, and its predecessor, for a number of years had maintained reciprocal checking accounts with the Central Trust Company of Cincinnati and collected items for each other. No notice was given by the Chattanooga National Bank to appellant of the collection of the draft.

On February 27, 1933, the Chattanooga National Bank drew a check for $40,027 upon the Central Trust Company, payable to the Federal Reserve Bank, which required part payment out of the proceeds of the draft in question. On presentation of the check by the Federal Reserve Bank, the Central Trust Company refused payment because the Cincinnati Clearing House had restricted withdrawals of its members to five percent of their balances. The Governor of Tennessee had proclaimed a bank holiday at the commencement of business March 1, 1933, extending through March 6, 1933, which was subsequently further extended until superseded by the proclamation of the President of the United States declaring a moratorium on the banking business throughout the country.

At the close of business February 25, 1933, the Chattanooga National Bank had on deposit with the Central Trust Company, Cincinnati, $12,423.32, which was increased to $71,552.83 at the close of business February 28, 1933. The Chattanooga National Bank did not reopen for business but went into liquidation with appellee as its receiver, and in the settlement of the accounts between the banks, appellee received from the Central Trust Company of Cincinnati, $68,000, $50,678.01 of which was the proceeds of the draft here in question.

Appellant proved and presented its claim as a general creditor of the Chattanooga National Bank and has received its pro rata share of liquidating dividends. It seeks in this action to recover as a preferred claim against appellee, the balance of the $50,678.01, after crediting liquidating dividends, the amount of which is not shown in the record.

On the foregoing facts, the court found appellant was a general creditor of the

---

ceptance of the above conditions by the depositor, in the absence of written notice to the contrary at the time.

2 Feb. 27, 1933
    The Central Trust Company
        Cincinnati, Ohio
Chattanooga National Bank,
Chattanooga, Tennessee.

In receiving checks, drafts, notes and all other items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for the default, failure or negligence of any of its direct or indirect collecting agents or correspondents nor for losses in transit and each such collecting agent or correspondent shall not be liable except for its own negligence. Right is reserved and this

bank or any of its correspondents may send items, directly or indirectly, at its discretion, to any bank, including the drawee or payor bank, and accept draft or credit of drawee or payor bank as conditional payment in lieu of cash; and this Bank or any of its correspondents may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited. City checks will be held at depositor's risk until next day's settlement between banks. In making deposits, the depositor assents to the foregoing conditions.

We Credit Your Account

| Description | Amount |
| --- | --- |
| 25 | 340.07 |
| | 664.05 |
| | 1,020.51 |
| | 51,257.01 |

We Charge Your Account.

Chattanooga National Bank and dismissed its petition, from which judgment appeal is prosecuted.

■ The solution of the issue presented depends on whether or not the transaction between appellant and the Chattanooga National Bank resulted in a debtor creditor relationship or that of principal and agent. There is some conflict among cases on the subject which we are not called upon to reconcile. The relief sought is predicated upon the laws of Tennessee Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

It is our duty to ascertain from all available data what the state law is and apply it, even though a different rule may appear superior from the viewpoint of the general law. This is true even when the state law is in conflict with prior federal decisions. West v. American Telephone and Telegraph Company, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. — (decided December 9, 1940).

■ As we understand the Tennessee law, when a draft or other commercial paper is deposited in a bank, indorsed for collection or where there is an understanding, express or implied, that such is the purpose of the parties at the time of the deposit, there is no question that title to the paper remains in the depositor, and each successive bank handling the item for collection is agent of the owner and liable to him for discharge of the duties incumbent on collecting agents and the several banks in the course of the chain of transmission are responsible only for the selection of proper agents and for their own diligence and propriety of action in respect of the collection. Drafts deposited as such, not as cash, do not give rise to the relationship of debtor and creditor and the title to them remains in the depositor, the bank merely acting as agent for him for the purpose of collection. Winchester Milling Company v. Bank of Winchester, 120 Tenn. 225, 228, 111 S.W. 248, 18 L.R.A.,N.S., 441. On the other hand, if there is an understanding, express or implied, at the time of the deposit that such paper is deposited as cash, such as authorizing the depositor to make withdrawals in advance of collection, it is clear that title passes to the bank and the relationship of debtor and creditor arises. Scott County, Tenn. v. Kent, 6 Cir., 97 F.2d 971.

■ Where a draft is unrestrictedly indorsed and deposited without any understanding, express or implied, as to the way it is to be treated, but is credited by the bank to the depositor as cash, the bank acquires prima facie title, which may be overthrown by ascertaining the intention of the parties, express or implied, as gathered from the circumstances. The intention of the parties as the controlling factor may be gathered from the form of the indorsement on the draft and the right accorded to the depositor to unrestrictedly draw on the funds created by the deposit of the draft in advance of collection and also the general course of dealing between the bank and the depositor. Friberg v. Cox, 97 Tenn. 550, 551, 37 S.W. 283.

■■ As to whether the present draft was sold to the Chattanooga National Bank or was placed there for collection, the proceeds to be put to appellant's account when collected, or was deposited for collection and remittance, depends wholly upon the intention of the parties to be determined from the facts surrounding the transaction. Appellant's indorsement of the draft to the Chattanooga Bank was unqualified. It had on deposit at all times with said bank an ordinary checking account and on the date of receipt of the draft, the Chattanooga Bank credited this account with $50,891.17 and on March 2, appellant drew its check on this account for $5,000 and while it is true it had $8,000 on deposit in addition to the credit for the draft, the admitted facts are that appellant, under the ordinary course of dealing between it and the Chattanooga Bank, had the right immediately to draw against the entire deposit. These are clear indicia of the relationship of debtor and creditor.

■ The letter of the Chattanooga Bank to appellant of February 27, 1933, and the letter of the Central Trust Company of the same date to the Chattanooga Bank, yield to and are governed by the intention of the parties as shown by their actions. Barton, Seed, Feed & Implement Co. v. Mercantile National Bank et al., 128 Tenn. 320, 160 S.W. 848; City of Douglas v. Federal Reserve Bank of Dallas, 271 U.S. 489, 494, 46 S.Ct. 554, 70 L.Ed. 1051. In our opinion, the Chattanooga National Bank became the owner of the draft in question and therefore collected it through the Central Trust Company, not as agent of appellant, but for its own account.

■ We are not content to rest our decision solely on the foregoing conclusion.

Appellant must fail on account of another well recognized rule of Tennessee law. Appellant was engaged in the banking business and well knew the general practice of banks to mingle proceeds of collections with other assets in accordance with the usual and convenient mode of conducting banking collection business. In the case at bar it is clear that appellant, by making the draft collectible through the Chattanooga National Bank, authorized collection by the method which was actually followed. In other words, by the reasonable construction of their acts, the parties must be held to have contemplated that the relationship of debtor and creditor should arise after collection, even though it did not exist before that time.

Viewed in the light most favorable to appellant, the Chattanooga National Bank had such rights in and title to the draft as were necessary to enable it to make the collection. The payment to the Central Trust Company by the C. N. O. T. & P. Company operated as a payment of the draft as against appellant. Ordinarily when a draft has been paid to the collecting bank or its forwarding agent, the owner's right of control ends and the relation between the owner and the collecting bank ceases to be that of agent and principal and becomes that of debtor and creditor. Upon the collection of the present draft, the Central Trust Company was not required to keep the proceeds by itself as appellant's property, but might mingle it with its own money and make itself the debtor of the appellant for the amount received. As the Cincinnati bank had not undertaken to represent the appellant in any way, and as the Chattanooga National Bank had dealt with the item as its property, and the Cincinnati bank had accepted it as such, the latter bank cannot be regarded as the subagent of appellant. Under the rule prevailing in Tennessee, if the bank of deposit, instead of proceeding as agent, credits the amount of the paper when unconditionally indorsed directly to the account of the depositor, the bank becomes the owner so that the corresponding bank is not the agent of the depositor but the agent of the forwarding bank. This rule is a just one because in accord with the general understanding between banks and customers in their dealings.

In depositing the draft in question, appellant surrendered all control over it including the means taken to collect. The Chattanooga National Bank undertook to collect for its own profit, followed its own method and selected its own agent. It would seem contrary to ordinary bank collection practice to hold the collecting bank or the forwarding bank as agent of the depositor.

Here the depositing bank undertook to check on its account with the collecting bank, to which account the draft had been credited, and the collecting bank undertook to check on its account in the forwarding bank to which the draft had been credited. The fact that neither check was honored, due to extraneous circumstances over which the parties had no control, does not in any way militate against the evidentiary weight of the conduct of the parties in showing that they intended to establish the ordinary relationship of creditor and debtor.

The collecting bank and the forwarding bank were in business when the present draft was paid and neither of them at that time had lost the right by reason of insolvency to appropriate the proceeds of the draft and to substitute for the money their own liability, as for a debt.

In the case of Dean Tobacco Warehouse Company v. American National Bank, 173 Tenn. 365, 366, 117 S.W.2d 746, 748, 118 A.L.R. 360, Dean deposited in the East Tennessee National Bank in Knoxville, Tennessee, a check drawn to its order by the American Suppliers Company on the American National Bank. The check was indorsed "Pay to the order of the East Tennessee National Bank, Knoxville, Tennessee. Dean Tobacco Warehouse Company." The depository bank indorsed the check "Pay to the order of any bank or banker" and forwarded it to the American National Bank for collection and credit. The respective banks maintained reciprocal accounts and the collecting bank on its deposit slips which Dean used in depositing the check, contained in substance the same conditions as found in the present letter of the Chattanooga National Bank of February 27, 1933. The American National Bank received the check on the morning of January 18, 1933, and charged it to the account of the American Suppliers and credited the proceeds to the account of the East Tennessee National Bank. The latter bank conducted its business in the usual manner during the day of January 18th, but did not thereafter reopen, due to insolvency. Dean sued the forwarding bank for the proceeds of the check and it urged as a de-

fense that the proceeds belonged to the collecting bank. The court in that case said "where provisional credit has been given a depositor, subject to collection, this becomes absolute when the correspondent receives payment and credits the forwarder" and the court further said this rule applied even though no notice was received by the forwarding bank that the check had been collected and credited to its account at the time it ceased to do business. We consider this case conclusive.

Judgment affirmed.